UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
IN RE:  SKI TRAIN FIRE IN KAPRUN   :
AUSTRIA ON NOVEMBER 11, 2000       :          MDL # 1428 (SAS)
-------------------------------------------------X
This document relates to the following actions:
-------------------------------------------------X          <u>OPINION & ORDER</u>
JOHANN BLAIMAUER, et al.,                   :
                                            :
                    Plaintiffs,             :
                                            :
        - against -                         :
                                            :          03–CV–8960 (SAS)
OMNIGLOW CORPORATION, et al.,                :
                                            :
                    Defendants.             :
-------------------------------------------------X
-------------------------------------------------X
HERMAN GEIER, et al.,                        :
                                            :
                    Plaintiffs,             :
                                            :
        - against -                         :
                                            :          03–CV–8961 (SAS)
OMNIGLOW CORPORATION, et al.,                :
                                            :
                    Defendants.             :
-------------------------------------------------X
-------------------------------------------------X
NANAE MITSUMOTO, et al.,                     :
                                            :
                    Plaintiffs,             :
                                            :
        - against -                         :          06–CV–2811 (SAS)
                                            :
THE REPUBLIC OF AUSTRIA, et al.,            :
                                            :
                    Defendants.             :
-------------------------------------------------X

```
-----------------------------------------------------X
NANAE MITSUMOTO, et al.,                             :
                                                     :
                          Plaintiffs,                :
                                                     :
        - against -                                  :          07–CV–935 (SAS)
                                                     :
ROBERT BOSCH                                         :
CORPORATION, et al.,                                 :
                                                     :
                          Defendants.                :
-----------------------------------------------------X
-----------------------------------------------------X
JOOP H. STADMAN, et al.,                             :
                                                     :
                          Plaintiffs,                :
                                                     :
        - against -                                  :          07–CV–3881 (SAS)
                                                     :
AUSTRIAN NATIONAL TOURIST                            :
OFFICE INC., et al.,                                 :
                                                     :
                          Defendants.                :
-----------------------------------------------------X
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

These cases arise from a disaster that occurred on November 11, 2000, in which a ski train in Kaprun, Austria caught fire, killing 155 people. American and foreign survivors and/or relatives of those who died in the fire brought a number of lawsuits in federal court against numerous defendants alleging, *inter alia*, negligence and strict liability. The Judicial Panel on Multidistrict Litigation assigned these actions to this Court for coordinated or consolidated pretrial proceedings. The actions within this multidistrict litigation

("MDL") fall easily into two groups – those filed on behalf of American plaintiffs,[1]

and those filed on behalf of foreign plaintiffs.  There are five actions falling in the

latter category, and defendants now jointly move to dismiss three of them

("*Blaimauer*," "*Geier*" and "*Mitsumoto v. Robert Bosch*") on several grounds,

including forum non conveniens.[2]  For the reasons stated below, defendants'

motion is granted, and all five of the foreign plaintiffs' actions are dismissed.[3]

## I.   BACKGROUND[4]

---

[1]     *See, e.g., Habblett v. Omni-Glow Corp.*, Nos. 01 MDL 1428, 02 Civ. 2492 (filed April 1, 2002); *Habblett v. Siemens AG*, Nos. 01 MDL 1428, 01 Civ. 6554 (filed July 19, 2001).  Hereafter, I refer to the cases brought on behalf of American plaintiffs as the "*Habblett* cases."

[2]     The parties have engaged in extensive motion practice.  To avoid repetitive briefing, only one defendant, Siemens Transportations Systems, Inc., briefed the motion to dismiss *Blaimauer* and *Geier* on the ground of forum non conveniens, which the remaining *Blaimauer* and *Geier* defendants incorporated by reference into their individually-filed motions to dismiss.  Similarly, the defendants in *Mitsumoto v. Robert Bosch* jointly move for dismissal on the ground of forum non conveniens, as briefed by Exxon Mobil.  *See* Memorandum of Law in Support of Exxon Mobil Corporation's Motion to Dismiss ("Exxon Mem.") at 13-22.  Motions to dismiss have not yet been filed in *Mitsumoto v. The Republic of Austria* (all briefing of dispositive motions was stayed pending service of plaintiffs' amended complaint on sovereign defendants), or in *Stadman v. Austrian Nat'l Tourist Office Inc.* (filed May 17, 2007).

[3]     Because I dismiss these actions based on forum non conveniens, I do not reach defendants' alternative arguments for dismissal, such as those predicated on statutes of limitations.

[4]     For a more thorough discussion of the procedural history of this MDL, see *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, Nos. 01 MDL 1428, 01 Civ. 6554, 01 Civ. 7242, 04 Civ. 1402, 2005 WL 1523508, at *1-2 (S.D.N.Y. June

Both *Blaimauer* and *Geier* were filed originally on November 10,

2003, and since have been amended numerous times. According to the most

recently amended complaints, the *Blaimauer* plaintiffs all hail from Germany,

Austria, Japan and Slovenia;[5] the *Geier* plaintiffs are all "citizens and/or residents

of Germany."[6] The defendants in both actions are identical and include the

following parties: Cyalume Technologies Inc., Omniglow Limited Partners of

New York ("Omniglow"), Siemens Transportation Systems Inc. ("STS"), Bosch

Rexroth Corporation ("Bosch"), Hydac Technology Corporation ("Hydac") and

Wika Instrument Corporation ("Wika").

Because all defendants named in *Blaimauer* and *Geier* are American

corporations, this Court presumably has federal diversity jurisdiction pursuant to

section 1332 of title 28 of the United States Code.[7] Although several defendants'

individually-filed motions to dismiss raise colorable jurisdictional questions, I do

---

27, 2005) ("*Ski Train I*"); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 404 (S.D.N.Y. 2002) ("*Ski Train II*"). There have been many more rulings in this MDL than I cite herein; it is only for ease of reference that throughout this Opinion, I assign these decisions consecutive roman numerals in the order in which I refer to them.

[5]     *See Blaimauer* Fourth Amended Complaint ("*Blaimauer* 4th Amend. Compl.") ¶ 3.

[6]     *Geier* Fourth Amended Complaint ("*Geier* 4th Amend. Compl.") ¶ 3.

[7]     *See* 28 U.S.C. § 1332.

4

not reach them here, as this Court "has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection."[8]

## II.   APPLICABLE LAW

### A.   Collateral Estoppel

"Under the doctrine of offensive collateral estoppel, a plaintiff may preclude a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff."[9]  In order to bar a defendant from raising a legal issue on collateral estoppel grounds, a plaintiff must show that (1) the issues in both proceedings are *identical*; (2) the issue in the prior proceeding was actually litigated and decided; (3) the defendant had a "'full and fair opportunity'" to litigate the issue in the prior proceeding; and (4) "'the issue previously litigated . . . [was] necessary to support a valid and final judgment on the merits.'"[10]

### B.   Forum Non Conveniens

---

[8]     *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188 (2007) (holding that "a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event," the case may be properly dismissed under the doctrine of forum non conveniens).

[9]     *Faulkner v. National Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).

[10]    *Id.* (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)).

"Forum non conveniens is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim."[11] The doctrine authorizes courts to dismiss cases where "an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience."[12] Courts may decline to exercise jurisdiction under this doctrine when it is determined that, weighing "relative advantages and obstacles to fair trial" in the alternative fora, and the practical considerations of which forum will "make trial of a case [more] easy, expeditious and inexpensive," "the balance is strongly in favor" of the defendant's request for dismissal in favor of a more convenient forum.[13]

In deciding whether to dismiss for forum non conveniens, courts in this Circuit undertake a three-step analysis. *First*, courts determine the degree of deference due the plaintiff's choice of forum.[14] *Second*, courts examine whether

---

[11]   *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (quotations and citation omitted).

[12]   *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quotations and citation omitted).

[13]   *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

[14]   *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*).

6

there is an adequate alternative forum for the dispute.[15] *Third*, courts engage in a balanced assessment of the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration.[16] Throughout this analysis, the defendant bears the burden of showing that each step "tilt[s] strongly in favor of trial in the foreign forum."[17] "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[18]

### 1. The Degree of Deference Accorded a Plaintiff's Choice of Forum

"Any review of a forum non conveniens motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'"[19] However, the strength of this presumption, and the degree of deference due the plaintiff's selection, "varies with the circumstances."[20] The degree of deference to be accorded the plaintiff's choice of forum is not determinative of the final outcome; rather, it

---

[15]     *See id.*

[16]     *See id.* at 73-74.

[17]     *Wiwa*, 226 F.3d at 108. *Accord P.T. United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

[18]     *Iragorri*, 274 F.3d at 74-75.

[19]     *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft*, 454 U.S. at 255).

[20]     *Iragorri*, 274 F.3d at 71.

7

merely re-calibrates the scales for the remaining two steps of the analysis.[21]  "[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal."[22]  Conversely, where less deference is due, "the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts."[23]

A "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum."[24]  "The reason great deference is generally afforded a plaintiff's choice of its home forum 'is because it is presumed to be convenient.'"[25]  By contrast, the choice of a United States forum by a foreign plaintiff is entitled to less deference, for the presumption that the choice is convenient "is much less reasonable."[26]

---

[21]   *See id.* at 73-74.

[22]   *Id.* at 74.

[23]   *Id.* at 72.

[24]   *Piper Aircraft*, 454 U.S. at 255.

[25]   *Norex Petroleum*, 416 F.3d at 154 (quoting *Iragorri*, 274 F.3d at 71).

[26]   *Piper Aircraft*, 454 U.S. at 256.

8

Courts must also consider whether the plaintiff's choice of forum appears to be "motivated by desire to impose tactical disadvantage on the defendant."[27]  Additionally, where indicia of forum shopping are present, the presumption in favor of the plaintiff's choice of forum "may not apply, either at all or with full force."[28]  Indicia of forum shopping may include: "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . [and] the inconvenience and expense to the defendant resulting from litigation in that forum."[29]

## 2.    Adequacy of the Alternate Forum

After determining the appropriate degree of deference to accord plaintiff's choice, "the court must consider whether an adequate alternative forum exists."[30]  The movant bears the burden to demonstrate the adequacy of the alternate forum.[31]  "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction.  In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory,

---

[27]    *Iragorri*, 274 F.3d at 73.

[28]    *Norex Petroleum*, 416 F.3d at 154.

[29]    *Iragorri*, 274 F.3d at 72. *Accord Norex Petroleum*, 416 F.3d at 155.

[30]    *Iragorri*, 274 F.3d at 73.

[31]    *See Norex Petroleum*, 416 F.3d at 157.

the other forum may not be an adequate alternative, and the initial requirement may not be satisfied."[32]   The mere fact that the substantive law in the alternative forum is less favorable to the plaintiffs is not sufficient to show that the alternative forum is inadequate.[33]   However, proposed alternative fora have been ruled inadequate "where the alternative forum does not permit litigation of the subject matter of the dispute,"[34] and where "a statute of limitations bars the bringing of a case in a foreign forum that would be timely in the United States."[35]

However, it is the plaintiff that carries the burden of proof when contesting the adequacy of the alternate forum on the basis that the court system is corrupt or inefficient, because "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards."[36]   Courts are reluctant "'to assume the responsibility for supervising the integrity of the judicial system of another

---

[32]   *Piper Aircraft*, 454 U.S. at 255 n.22.

[33]   *See id.* at 247.

[34]   *Id.*

[35]   *Norex Petroleum*, 416 F.3d at 159.  With respect to the cases at bar, plaintiffs do not allege that their claims must be brought in the United States because they would be time-barred in Austria.

[36]   *P.T. United Can*, 138 F.3d at 73.

10

sovereign nation."[37]  Consequently, "[t]he 'alternative forum is too corrupt to be
adequate' argument does not enjoy a particularly impressive track record."[38]
Along those lines, in *Tuazon v. R.J. Reynolds Tobacco Co.*, the Ninth Circuit held
that the trial court erred in concluding that the Philippines was an inadequate
forum, where that conclusion relied on plaintiff's "general allegations" of
corruption and delay in the Philippine court system.[39]  In other words, in order for
a plaintiff to establish successfully the inadequacy of an alternative forum, she
must "plainly demonstrate that [she is] highly unlikely to obtain basic justice [in
the foreign jurisdiction]."[40]

### 3.    Balancing Public and Private Factors

With respect to the third stage of a forum non conveniens analysis, the
first set of factors courts must consider are the relative conveniences to the parties
of litigating in plaintiff's chosen forum or in the alternative forum proposed by

---

[37]    *Id.* (quoting *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982
(2d Cir. 1993)).

[38]    *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997)
(collecting cases).

[39]    433 F.3d 1163, 1178-80 (9th Cir. 2006) (affirming dismissal on other
grounds).

[40]    *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001).

11

defendant.[41] These factors encompass: "'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing[] witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'"[42] In undertaking this analysis, courts should examine the specifics of the claims: "[r]ather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried."[43] However, courts need not undertake to identify all "the rights, remedies, and procedures available under the law that would be applied in each forum."[44]

The second set of factors courts must balance are those of public convenience. "Public interest factors include: court congestion; the interest of forums in having local disputes decided at home; and, the interest in having issues of law decided by courts of the nation whose law is involved."[45]

---

[41]   *See Iragorri*, 274 F.3d at 73.

[42]   *Id*. at 73-74 (quoting *Gulf Oil*, 330 U.S. at 508).

[43]   *Id*. at 74.

[44]   *Piper Aircraft*, 454 U.S. at 252.

[45]   *Carey v. Bayerische Hypo-Und Vereinsbank, A.G.*, 370 F.3d 234, 237 (2d Cir. 2004).

## III.   DISCUSSION

### A.   Collateral Estoppel

As a threshold consideration, plaintiffs argue that the doctrine of collateral estoppel precludes defendants moving for forum non conveniens dismissal.[46]   Plaintiffs present this as their strongest defense against defendants' joint motion, but it may be disposed of swiftly.   The prior proceeding underpinning plaintiffs' collateral estoppel claim is a previous decision by this Court denying a motion to dismiss the American plaintiffs' *Habblett* cases for forum non conveniens.[47]   Foreign plaintiffs contend that collateral estoppel applies because "nothing has changed" since that ruling, in which the Court addressed issues "virtually identical" to those raised by defendants' present motion.[48]   This analogy is just as disingenuous as it is unavailing, for it glosses over a stark and critical distinction that has been reiterated time and again, which is that the *Habblett* plaintiffs are *all American citizens.*   By any reading of *Ski Train III*, the fact that the *Habblett* plaintiffs are American citizens (two of whom then resided in the Southern District of New York) was a decisive factor in the Court's forum non

---

[46]     *See* Plaintiffs' Response to [Second] Motion to Dismiss Based on Alleged *Forum Non Conveniens* and Statute of Limitations Grounds ("Pl. Mem.") at 6-8.

[47]     *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 376 (S.D.N.Y. 2002) ("*Ski Train III*").

[48]     Pl. Mem. at 9.

13

conveniens analysis.[49] Because the issues currently before the Court are not identical to those previously litigated, plaintiffs' invocation of the collateral estoppel doctrine must fail.

### B.    Forum Non Conveniens

#### 1.    Deference to Plaintiffs' Choice of Forum

From the outset, because none of these plaintiffs is an American citizen, plaintiffs' choice of the United States as a forum commands "considerably less" deference than it would if this country were their home.[50] Additionally, defendants urge this Court to accord plaintiffs' forum choice *zero* deference on the grounds that it was based on impermissible forum shopping.[51] As the Second Circuit has recognized, where a foreign plaintiff has chosen a United States forum, "a plausible likelihood exists that the selection was made for forum shopping reasons, such as the perception that United States courts award higher damages than are common in other countries."[52] This likelihood rises dramatically in situations where neither the plaintiffs nor the event giving rise to the lawsuit have

---

[49]    *See Ski Train III*, 230 F. Supp. 2d at 388.

[50]    *Gilstrap v. Radianz, Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006).

[51]    *See* Reply Memorandum of Law in Support of Siemens Transportation Systems, Inc.'s Motion to Dismiss ("STS Reply Mem.") at 7.

[52]    *Iragorri*, 274 F.3d at 72.

any "bona fide connection[s]" to the United States.[53]  While defendants proffer no

hard evidence that plaintiffs' decision was aimed at obtaining an impermissible

tactical advantage, procedural considerations such as fee awards raise a strong

inference that forum shopping motivated foreign plaintiffs' decision to sue in the

United States.[54]

      To start, defendants observe that nowhere in plaintiffs' opposition do

they articulate a single legitimate, substantiated justification for electing to pursue

their claims in the United States.[55]  Defendants further suggest that the following

factors are suggestive of forum shopping:  plaintiffs are more likely to get higher

damages awards and contingency fees for attorneys in the United States; plaintiffs

are not suing to enforce federal laws;[56] these are diversity actions arising in Austria

---

[53]    *Id.*

[54]    *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir.
2003) (in assessing the degree of deference to accord a plaintiff's choice of forum,
courts should look to the plaintiff's "likely motivations in light of all the relevant
indications").

[55]    *See* STS Reply Mem at 9.  The only legitimate reason for choosing a U.S.
forum suggested in plaintiffs' brief is that "[w]histleblower witnesses have come
forward with critical evidence that can only be presented in the United States and
others [sic]."  Pl. Mem. at 4.  But these "whistleblower witnesses" did not come
forward until sometime in 2006, years after plaintiffs first filed these actions in
federal court.

[56]    *Cf. DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002)
(reasonable to presume that foreign plaintiffs invoking United States securities
laws would choose United States forum for convenience).

and governed by Austrian law;[57] all plaintiffs hail from Europe and Asia, thus

rendering the United States a comparatively inconvenient forum; and in at least

one instance, plaintiffs brought suit against the American affiliate of a real party in

interest merely "in a transparent attempt to secure diversity jurisdiction in federal

court."[58]  Taken together, these considerations – particularly the last one, which

plaintiffs neglect to oppose and which is more fully discussed below – are

probative of forum shopping.[59]

As foreigners, plaintiffs properly can invoke this Court's diversity

jurisdiction by bringing suit against American business entities, *i.e.*, STS, a

Delaware corporation; Hydac, a Pennsylvania corporation; and Wika, a New York

corporation.  Plaintiffs, however, cannot bring suit in this Court where another

foreign entity is named as the primary defendant, for such party would destroy

diversity.[60]  For example, it is no mystery that plaintiffs do not name Siemens

Austria as a defendant even though it is the only Siemens entity that built systems

---

[57]    *Cf. Gilstrap*, 443 F. Supp. 2d at 479.

[58]    STS Reply Mem. at 8.

[59]    *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, 421 F.
Supp. 2d 741, 762 (S.D.N.Y. 2006) (according less deference to foreign plaintiffs'
choice of forum where plaintiffs decided not to sue the real party in interest (an
English company with its principal place of business in England), but rather its
affiliate (a Delaware corporation), in order to preserve diversity jurisdiction).

[60]    *See* 28 U.S.C. § 1332(a)(2).

16

for the Kaprun train.[61]  Nor do plaintiffs name Siemens AG as a defendant, a

German corporation with its principal place of business in Munich, although

Siemens AG supplied Siemens Austria with parts that may have been incorporated

on the train systems (and thus Siemens AG has long since been a defendant in the

*Habblett* cases).[62]  Facts borne out in the early stages of these suits indicate that

plaintiffs were aware at the time they filed their initial complaints that the

allegations contained therein implicate Siemens Austria and Siemens AG more

than any other Siemens entity. [63]  Tellingly, plaintiffs target the allegations in their

amended complaints at the *foreign affiliates* of STS, to wit the "SIEMENS-

Transportation . . . entities located in Germany or Austria."[64]  In order to overcome

the jurisdictional hurdles of pursuing their claims in this forum, plaintiffs were

forced to sue STS, whose only alleged connection to the Kaprun disaster is the

---

[61]     *See* Memorandum of Law in Support of Siemens Transportation Systems, Inc.'s Motion to Dismiss ("STS Mem.") at 7-8.  Prior to foreign plaintiffs' filing of these actions, the American plaintiffs had identified Siemens AG, Siemens Corporation and Siemens Austria as parties in interest and named them as defendants in the *Habblett* cases.  In 2002, this Court granted Siemens Austria's motion to dismiss for lack of personal jurisdiction and denied Siemens AG's motion to dismiss on the same grounds. *See Ski Train III*, 230 F. Supp. 2d at 376.

[62]     *See* STS Mem. at 8.

[63]     *See id.*

[64]     *Blaimauer* 4th Amend. Compl. ¶ 73; *Geier* 4th Amend. Compl. ¶ 73.

17

wrongdoing of its foreign affiliates.[65] That there are powerful indicators that

plaintiffs are suing STS solely to preserve diversity – in effect using STS as a

conduit for asserting claims against real parties in interest who are foreign – leads

this Court to accord very little deference to plaintiffs' choice of forum.[66]

---

[65] Compared to its foreign affiliates, STS is only remotely connected to the wrongdoing alleged in plaintiffs' complaints. *See* STS Mem. at 2 (noting that STS has never been named as a defendant in the *Habblett* cases). Prior to amending their complaints for a fourth time, plaintiffs had named Siemens AG and Siemens Austria as defendants "doing business as" Siemens Corporation, STS, and a host of other U.S.-based Siemens companies. In their Fourth Amended Complaints, plaintiffs ultimately dropped all Siemens entities save for STS as defendants. *See Blaimauer* 4th Amend. Compl. ¶¶ 68; 73; *Geier* 4th Amend. Compl. ¶¶ 67, 72. Additionally, because foreign plaintiffs' claims against Siemens Corporation were recently dismissed with prejudice from a parallel New York state action, their federal court claims against Siemens Corporation would likely be barred as a result of *res judicata*. *See* Order, *Mitsumoto v. Bosch Rexroth AG*, No. 06/105008 (Sup. Ct. N.Y. Co. Dec. 8, 2006).

[66] *See Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998) ("Because the real parties in interest are foreign corporations, there is not a strong presumption in favor of the plaintiffs' choice of forum."). *See also Pollux Holding Ltd.*, 329 F.3d at 74 ("[A] plaintiff's choice to initiate suit in the defendant's home forum . . . only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum."). That plaintiffs are using American corporations as a pretext for asserting claims against their foreign affiliates who are the real parties in interest is most obvious as to STS, although Wika argues a similar point in its separately filed motion to dismiss. To wit, Wika argues – unopposed – that even accepting plaintiffs' allegations as true, by the complaints' plain language, the real parties in interest are clearly Wika's foreign affiliates, rather than Wika itself. *See* Wika Amended Memorandum of Law in Further Support of Wika Instrument Corporation's Motion to Dismiss at 2-5 (citing, *inter alia, Blaimauer* 4th Amend. Compl. ¶¶ 114-116, stating that "Wika is the subsidiary, alter ego, actual and/or de facto agent for their German foreign parents Defendant WIKA" and that "Defendant WIKA works together with and provides

18

## C.    Austria as an Adequate Forum

Defendants have met their burden of demonstrating the adequacy of

an alternative forum. Defendants offer unrebutted evidence that Austria has an

effective and efficient judicial system,[67] bolstering this Court's own previous

finding that Austria provides an adequate alternative forum for litigating disputes

arising out of the Kaprun disaster.[68] Additionally, the fact that *all* foreign plaintiffs

presently are pursuing actions in Austrian courts arising out of the ski train fire

dramatically undercuts any argument that Austria is an inadequate forum.[69]

Specifically, it belies plaintiffs' conclusory and wholly unsubstantiated claim that

---

technology, materials, equipment and services, to other Defendants . . . which were
involved with The Train, Tunnel, Alpine Center & Valley Station").

[67]    *See* Expert Report of Austrian Superior Court Judge Georg E. Kodek
("Kodek Report"), Exhibit ("Ex.") B to Declaration of Ryan M. Morettini, counsel
for STS ("Morettini Decl.") ¶¶ 1.2, 1.3, 1.4.

[68]    *See Ski Train III*, 230 F. Supp. 2d at 387-88 (noting that although plaintiffs
raised "serious questions going to the integrity of the criminal investigation in
Austria," it is the integrity of Austria's judicial system – "not that of the executive
branch" – that is important to the forum non conveniens inquiry).

[69]    Indeed, plaintiffs' counsel has informed the Court that each foreign plaintiff
(either individually or as a family) currently has an action pending in an Austrian
court against at least one defendant, arising out of the Kaprun disaster. *See* 6/18/07
Email from Edward D. Fagan, counsel for foreign plaintiffs, to the Court. *See also*
STS Mem. Appendix 2 (listing the thirty-four *Blaimauer* plaintiffs and seven *Geier*
plaintiffs with actions pending in Austria, as well as the corresponding Austrian
case numbers and the names of plaintiffs' local counsel).

Austrian courts have "already pre-judged the victim [sic] claims."[70]  Nor do

plaintiffs offer any bases for their assertion that Austria is an inadequate alternative

forum because the "majority of the defendants" are "not subject to the jurisdiction

of [Austrian] courts."[71]  The second requirement for forum non conveniens

dismissal is satisfied.

### D.   Balancing of Public and Private Interests

#### 1.   Private Convenience Factors

Defendants show that private interest factors weigh in favor of

dismissal.  No relevant events occurred in the United States, no relevant evidence

is located in this county, and most key defendants and key witnesses (including

most plaintiffs) are found in Austria or elsewhere in Europe.  Plaintiffs argue that

"everything that has occurred in this case in the last five years strengths [sic] the

Courts [sic] keeping the plaintiffs [sic] claims in the United States," but the record

in these cases demonstrates precisely the opposite.[72]  Plaintiffs cannot refute

---

[70]   Pl. Mem. at 4.

[71]   *Id*.  Plaintiffs do not dispute defendants' observation that STS, along with
other defendant corporations, have foreign affiliates that are much more closely
linked to the allegedly tortious conduct spelled out in plaintiffs' complaints, and
that these foreign affiliates would be subject to the jurisdiction of an Austrian
court.  *See* STS Reply Mem. at 7-9; *Blaimauer* 4th Amend. Compl. ¶ 73 (alleging
wrongdoing on the part of "SIEMENS-Transportation" entities "located in
Germany and Austria"); *Geier* 4th Amend. Compl. ¶ 72 (same).

[72]   Pl. Mem. at 9.

defendants' observation that only "desultory progress" has been made in these

cases since they were filed in 2003, and what little progress has been made relates

largely to the jurisdictional hurdles plaintiffs face in prosecuting their actions in

this forum.[73] For example, since December 2006, much of the parties' time and

efforts have been spent addressing plaintiffs' attempts to marshal evidence in

support of their motion for this Court to reconsider, pursuant to Federal Rule of

Evidence 60(b), its previous ruling dismissing defendant Gletscherbahnen Kaprun

Aktiengesellschaft ("GBK") from this MDL for lack of personal jurisdiction.[74]

---

[73]    STS Mem. at 11.

[74]    *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, No. 01 MDL
1428, 2003 WL 22909153, at *6 (S.D.N.Y. Dec. 9, 2003) (*"Ski Train IV"*); Foreign
Plaintiffs' Motion for Rule 60 and Other Relief as Against GBK, relating to 03
Civ. 8960, 03 Civ. 8961, 06 Civ. 2811 (dated "January 11 & 16, 2007"). GBK is a
privately held corporation that has its principal place of business in Kaprun,
Austria; GBK owns and operates a ski resort located on Kitzsteinhorn Mountain,
including the ski train and tunnel involved in the accident. *See Ski Train IV*, 2003
WL 22909153, at *1. In April of this year, days of depositions took place in
Austria of the purported "whistleblowers" that plaintiffs claimed would support
their motion to have GBK brought back in as a party to this MDL. These
depositions were attended by nearly all counsel involved in foreign plaintiffs'
actions, in light of plaintiffs' representations that one of the whistleblowers would
testify as to first-hand technical knowledge of the train operations and the
dangerous products that were allowed to be put on the train. *See* 12/18/06
Conference Transcript (12/18/06 "Conf. Tr.") at 41-42. Ultimately, this proved
untrue. *See* 4/12/07 Translated Deposition Transcript of Georg Schwarz
("Schwarz Tr.") at 44-45, Ex. 2 to Declaration of Paul P. Rooney, counsel for
Bosch Rexroth Corporation, in Support of Defendant Bosch Rexroth Corporation's
Motion to Sanction Plaintiffs' Counsel Pursuant to 28 U.S.C. § 1927 and to
Disqualify Plaintiffs' Counsel (filed 5/17/07) ("Rooney Decl.").

21

And nearly all of the discovery that plaintiffs list as having been accomplished in these actions relate solely to preliminary considerations such as jurisdiction and standing, which remain unresolved.[75] With respect to these plaintiffs' actions that name sovereign entities as defendants, no progress has been made at all, for several of these entities are contesting service and/or moving to quash plaintiffs' subpoenas and deposition notices on the grounds that this Court *already* ruled – in previous actions filed by the same counsel who represent foreign plaintiffs here – that personal and/or subject matter jurisdiction was lacking.[76] Defendants also point out that to date, there has been no discovery of the individual foreign plaintiffs in the *Blaimauer* case – not a single plaintiff has been deposed.[77] For the purposes of defendants' present motion, the key point is that vast amounts of time

---

[75]    *See* Pl. Mem. at 3-5.  Defendants note that plaintiffs' opposition sets forth numerous factual allegations in "a series of unelaborated and unsupported bulletpoints" that lack any citation to the record.  STS Reply Mem. at 11.

[76]    *See* Memorandum of Law of Oesterreichische Electrizitaetswirtschafts AG and Verbund-Austrian Hydro Power AG in Further Support of their Motion to Quash the Subpoena Duces Tecum and Deposition Notice (filed 2/7/07 in *Mitsumoto v. Republic of Austria*, 06 Civ. 2811) ("OE-AG Mem.") at 2-4; *Kern v. Oesterreichische Elektrizitaetswirtschaft AG* ("OE-AG"), 178 F. Supp. 2d 367 (S.D.N.Y. 2001) (dismissing complaint against OE-AG for lack of subject matter jurisdiction); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, Nos. 01 MDL 1428, 01 Civ. 7342, 2003 WL 1807148, at *6 (S.D.N.Y. Apr. 4, 2003) (dismissing complaint against Verbund-Austrian Hydro Power AG for lack of personal jurisdiction); 12/18/06 Conf. Tr. at 11-14 (plaintiffs' counsel acknowledging that Austrian sovereign entities had yet to be properly served).

[77]    *See* STS Reply Mem. at 11.

22

and energy have been expended simply in attempts to overcome severe
jurisdictional obstacles, without any significant progress being made toward a
resolution of these cases.

Nor do plaintiffs refute defendants' contentions that the difficulties
the American plaintiffs' have had in pursuing their Kaprun-related litigation here
in the United States reinforces the conclusion that Austria would be a far more
convenient forum.[78] Effectively all documentary evidence in the American
plaintiffs' actions has come from Europe, and the same will be true of these
actions.[79] Moreover, the logistical difficulties of obtaining all relevant evidence
and having it translated into a useable form for this Court are particularly
burdensome in light of the record that exists from the criminal trial relating to the
ski train fire that took place in Salzburg, Austria, in 2002.[80] Sixteen people were

---

[78]  *See* STS Mem. at 25.

[79]  Because Austria is not a party to the Hague Convention, plaintiffs' efforts to
obtain evidence from Austria through letters rogatory in these cases has proven
time consuming and largely unproductive. *See* 5/7/06 Letter from B. Ha, former
counsel for plaintiffs, to the Court (requesting seventeen letters rogatory seeking
testimony from Austrian witnesses), Ex. G to Morettini Decl.; OE-AG Mem. at 1-2
(stating that as of February 7, 2007, plaintiffs had yet to process the Letters
Rogatory authorized by this Court on June 26, 2006); 12/18/06 Conf. Tr. at 10-13
(plaintiffs' counsel explaining difficulties encountered in serving letters rogatory).

[80]  *See* Exxon Mem. at 17 (citing Expert Report and Declaration of Dr. Georg
E. Kodek ("Kodek 2007 Decl."), Ex. A to the Declaration of John F. Tully, counsel
for ExxonMobil, in Support of ExxonMobil Corporation's Motion to Dismiss, at
§§ 1.5, 4).

tried, including two state officials; the trial involved sixty days of hearings, testimony from ninety-five witnesses,[81] numerous expert reports and testimony from court-appointed experts.[82]  On February 19, 2004, the trial court rendered its verdict acquitting the individual defendants, and also issued a 372-page opinion examining, in detail, the fire, its causes, and the responsibilities of various entities and individuals.[83]  It would indeed be "incomprehensibly cumbersome, incredibly costly and time-consuming" to attempt to obtain and translate all of this testimony and tangible evidence.[84]

Most of the witnesses necessary to prosecute the foreign plaintiffs' cases also hail from Europe (even apart from the plaintiffs themselves).  Plaintiffs claim, without basis, that "[w]histleblower witnesses have come forward with

---

[81]    According to defendants, many of these witnesses were questioned by the Austrian attorneys who represent plaintiffs in their respective individual actions currently pending in Austria.  *See* STS Mem. at 14.

[82]    *See* Kodek 2007 Dec. §§ 1.5, 4.

[83]    The prosecutor appealed this verdict, but the Court of Appeals in Linz, Austria, affirmed the trial court's judgment on September 27, 2005.  *See* STS Mem. at 14 (citing Kodek 2007 Decl. § 1.5).  *See also* Kodek 2007 Decl. § 4 (opining that Austrian courts took "unprecedented efforts . . . to find out the true cause of this catastrophe" and that the trial court's judgment offers a "meticulous" and carefully reasoned analysis of the evidence adduced at the criminal trial, which included fifty thousand pages of documents).

[84]    Exxon Mem. at 16.

critical evidence that can only be presented in the United States and others [sic],"[85] but this is patently false, as the Court is aware that both "whistleblowers," Georg Schwarz and Maria Steiner, testified at the Austrian criminal trial, and that neither conveyed information during their recent depositions that could be construed as critical.[86] And plaintiffs' further assurance that "all witnesses who plaintiffs intend to call as witnesses will voluntarily appear" hardly tips the scales at all, for defendants have implied that the third-party witnesses who *defendants* would require to defend these suits currently reside in Europe and may not be amenable to appearing in a United States courtroom.[87] This Court cannot compel the testimony of non-party witnesses living in Austria.

Plaintiffs bootstrap their argument that private convenience factors tip against dismissal on this Court's previous decision in *Ski Train III*. As noted above, plaintiffs' reliance on that opinion is misplaced, for it addressed forum non conveniens issues with respect to the *Habblett* cases. As a threshold comparison, because the plaintiffs in those actions are American, the Court properly accorded

---

[85]    Pl. Mem. at 4.

[86]    *See* Schwarz Tr.; 4/12/07 Translated Deposition Transcript of Maria Steiner, Ex. 7 to Rooney Decl.

[87]    STS Reply Mem. at 12.

their forum choice much greater deference than it accords here.[88]  Moreover, in *Ski Train III*, the Court expressly stated that the convenience of the named plaintiffs was a "most important" factor to its forum non convenience analysis.[89]  Had the named plaintiffs not been American, the Court's balancing of private conveniences would have been very different.  Here, the fact that *all* plaintiffs are non-U.S. residents "severely limits any interest they may have in pursuing their claims in this forum."[90]

               Another private interest that weighs heavily in favor of dismissal here – which was not present in the *Habblett* cases – is the fact that defendants will be unable to implead certain foreign parties as third-party defendants because doing so would defeat diversity.[91]  For instance, in light of the Austrian trial court's

---

[88]    *See Ski Train III*, 230 F. Supp. 2d at 387-88.

[89]    *Id.* at 388 n.6.

[90]    *Matli v. Strategic Minerals Corp.*, No. 04 Civ. 5555, 2004 WL 2297373, at *1 (S.D.N.Y. Oct. 12, 2004).

[91]    This private convenience factor weighs particularly heavily in favor of dismissal where the action is brought by foreign plaintiffs. *See Piper Aircraft*, 454 U.S. at 259 ("The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland."); *Gulf Oil Corp.*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to the court, jury or most litigants."); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975) ("The inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction in the

findings suggesting that GBK, "if anyone," shoulders a large portion of

responsibility for the Kaprun accident, the fact that defendants are foreclosed from

impleading third-parties such as GBK strongly militates in favor of forum non

conveniens dismissal.[92]

      Lastly, plaintiffs fail to address the fact that Austria does not

recognize foreign judgments, and thus no decision rendered in this litigation would

be accorded *res judicata* effect in Austria.[93]  The Court's concern that defendants

could not achieve complete finality if they are ultimately absolved of liability in

this forum is heightened by the fact that many plaintiffs have commenced their

own suits in Austria.  As defendants note, a "defense judgment in these actions

---

Southern District of New York.").  *See also Strategic Value Master Fund*, 421 F.
Supp. 2d at 770 (defendant's inability to implead foreign third parties favored
dismissal); *Kilvert v. Tambrands Inc.*, 906 F. Supp. 790, 796 (S.D.N.Y. 1995) ("A
defendant's inability to implead other direct tortfeasors has been held to constitute
'clear prejudice' and thus to point strongly in favor of dismissal . . . . [W]hen an
action involves foreign plaintiffs . . . the argument for dismissal is even stronger."
(citation omitted)).

[92]    Plaintiffs' efforts to add GBK as a party to *Blaimauer* and *Geier* persist
notwithstanding the fact that if they are successful, they will have destroyed the
very diversity on which this Court's jurisdiction relies.  *See In re Ski Train Fire in
Kaprun, Austria on Nov. 11, 2000*, 198 F. Supp. 2d 420, 426-27 (S.D.N.Y. 2002)
(holding that GBK is not an "agent or instrumentality" of Austria and thus does not
qualify as a sovereign entity for purposes of ascertaining jurisdiction), *aff'd*, 67
Fed. Appx. 24 (2d Cir. 2003) (unpublished decision).

[93]    *See Kern v. Siemens Corp.*, 393 F.3d 120, 129 n.8 (2d Cir. 2004) ("questions
as to the enforceability of a judgment if one is obtained" weigh in favor of
dismissal on forum non conveniens grounds).

would have no effect on whether a company such as GBK who is a defendant in the Austrian suits could seek contribution or indemnity from STS or the other co-defendants."[94] The inability to enforce whatever judgment results in this forum supports forum non conveniens dismissal.[95]

### 2.    Public Convenience Factors

The balance of public interests also weighs heavily in favor of dismissal. *First*, there is no dispute that the Kaprun tragedy was the most deadly national tragedy in Austria since World War II. Accordingly, Austria undoubtedly has a significant "'local interest in having [this] localized controvers[y] decided at home.'"[96] As this Court has noted previously, Austria's interest in all Kaprun-related litigation is "far greater" than New York's interest, given that "many if not most of the 155 victims were Austrian, the safety of Austria's transportation system is implicated, and "much of the alleged wrongful conduct [was committed] within Austria's borders."[97] *Second*, for many of the same reasons, it is a virtual

---

[94]    STS Reply Mem. at 14.

[95]    *See Gulf Oil*, 330 U.S. at 508 (recognizing the enforceability of a final judgment, if obtained, as a proper forum non conveniens inquiry).

[96]    *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509).

[97]    *Ski Train III*, 230 F. Supp. 2d at 390.

certainty that Austrian law will govern most issues in these cases.[98]  Although this
Court previously found that the necessity of broaching questions of Austrian law
did not warrant the dismissal of Kaprun-related litigation, defendants now argue,
convincingly, that recent proceedings in Austria "highlight the massive
commitment of resources that Austria has made, over which plaintiffs in the[se]
cases explicitly ask this Court to pass judgment."[99]  The Austrian trial court which
oversaw the 2002 criminal proceeding reserved the right of victims, survivors and
their families to pursue civil lawsuits under Austrian tort law.  Many such lawsuits
were subsequently filed.  The Austrian government formed a mediation committee
for the purpose of actively promoting the settlement of Kaprun-related litigation.[100]
Although the existence of these related civil proceedings is not decisive, plaintiffs'
total failure to address this issue is troubling, especially because many of the
foreign plaintiffs here are pursuing potentially overlapping individual lawsuits in
Austria.

   Plaintiffs also neglect defendants' assertions that because Austrian tort
law is undergoing reexamination and revision in the wake of the Kaprun disaster,

---

[98]   *See id.* (holding that because Austria was "the locus of the tort" and has a
greater interest in the litigation than New York, this Court will "likely be required
to apply" Austrian law to plaintiffs' claims).

[99]   STS Mem. at 15.

[100]   *See id.*

29

the task of ascertaining and applying Austrian law will be unusually difficult.[101]
To the extent that this Court is willing to apply even the most complicated or
convoluted principles of foreign law, it is of some concern that plaintiffs *implicitly*
are urging this Court to "simply ignore what is transpiring in Austria . . . ."[102] As
the Supreme Court has instructed, the avoidance of such "unnecessary problems in
conflict of laws" supports forum non conveniens dismissal.[103]

Plaintiffs make the outlandish statement that because the "Kaprun
Criminal Process" is over "there is no longer any public or private interest in
Austria for the claims to be adjudicated there."[104] Such sweeping conclusions
cannot rescue these foreign plaintiffs from the obvious:  their U.S. cases have
"dragged on for years, without resolution of the threshold jurisdictional issues, let
alone development [or complete discovery] of the merits" of their claims, due to
the inconvenience of litigating them in this forum – an inconvenience that is "out
of all proportion" to plaintiffs' purported convenience.[105]

---

[101]    *See id.* (citing Kodek 2007 Decl. § 4).

[102]    *Id.*

[103]    *Piper Aircraft*, 454 U.S. at 241 n.6 (citation omitted).

[104]    Pl. Mem. at 4.

[105]    *Sinochem*, 127 S. Ct. at 1190.

## III.   CONCLUSION

In accordance with this Court's findings that plaintiffs' choice of

forum is entitled to greatly diminished deference, that Austria is an adequate

alternative forum, and that the scales of convenience tip overwhelmingly in favor

of dismissal, all five actions within this MDL brought solely on behalf of foreign

plaintiffs are dismissed on the ground of forum non conveniens.[106]  The Clerk of

---

[106]     Aside from the fact that *Mitsumoto v. The Republic of Austria*, No. 06 Civ.
2811, and *Stadman v. Austrian Nat'l Tourist Office*, No. 07 Civ. 3881, name
sovereign entities (amongst others) as defendants, they are so substantially similar
to *Blaimauer*, *Geier* and *Mitsumoto v. Robert Bosch* – *i.e.*, all five actions were
filed solely on behalf of foreign plaintiffs and arise out of the November 11, 2000
ski train fire in Kaprun, Austria – that a nearly identical forum non conveniens
analysis applies, and dictates the same result.

31

Court is directed to close these cases [Nos. 03 Civ. 8960; 03 Civ. 8961; 06 Civ.

2811; 07 Civ. 935; 07 Civ. 3881].[107]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
       June 19, 2007

---

[107]   Because these cases are dismissed on the ground of forum non conveniens,
the following motions are now moot: (1) Bartlett, McDonough, Bastone &
Monaghan LLP's Motion to Quash Subpoena Served on Behalf of Foreign
Plaintiffs (Docket No. 138; 03 Civ. 8960); (2) Omniglow's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 56 for Lack of Standing (Docket No. 121; 03 Civ.
8960); (3) Foreign Plaintiffs' Motion to Disqualify and Sanction E. Gordon
Haesloop, Esq. and Bartlett, McDonough, Bastone & Monaghan LLP (Docket Nos.
25, 29, 30; 07 Civ. 935); (4) St. Paul Travelers' Motion to Quash Subpoena Served
on Behalf of Foreign Plaintiffs (Docket Nos. 45, 46; 06 Civ. 2811); and (5) Foreign
Plaintiffs' Motion for Rule 60 and Other Relief as Against GBK (Docket No. 48;
06 Civ. 2811). Additionally, several defendants have joined in Bosch Rexroth's
Motion for Sanctions Under 28 U.S.C. § 1927 and to Disqualify Edward D. Fagan,
Esq. as Plaintiffs' Counsel (Docket No. 159; 03 Civ. 8960). Although the
disqualification portion of this motion is now moot, the Court will address
defendants' request for sanctions in a separate Order.

32

- **Appearances** -

*For Plaintiffs:*

Edward D. Fagan, Esq.
c/o Hantman & Associates
1313 Avenue of the Americas, Suite 406
New York, New York 10019
(212) 684-3933

James F. Lowy, Esq.
International Law Group, LLC
3907 Henderson Boulevard
Suite 200
Tampa, Florida 33629

Robert J. Hantman, Esq.
Hantman & Associates
1313 Avenue of the Americas, Suite 406
New York, New York 10019
(212) 684-3933

*Liaison Counsel for all Defendants:*

Paul P. Rooney, Esq.
Reed Smith LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
(212) 521-5435

*For Defendant Siemens Transportation Systems, Inc.:*

Ryan M. Morettini, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Brant W. Bishop, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Robert W. Littleton, Esq.
Littleton Joyce Ughetta & Park LLP
39 Broadway, 34th Floor
New York, New York 10006
(212) 404-5777

*For Defendant Robert Bosch Corp.:*

Arnd N. von Waldow, Esq.
Paul P. Rooney, Esq.
Reed Smith LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
(212) 521-5435

*For Defendant Wika Instrument Corp.:*

Eileen T. McCabe, Esq.
Stephen Roberts, Esq.
William Lalor, Esq.
Mendes & Mount LLP
750 Seventh Avenue
New York, New York 10019
(212) 261-8000

*For Defendant Hydac Technology Corp.:*

Nancy Ledy-Gurren, Esq.
Ledy-Gurren, Bass & Siff LLP
475 Park Avenue South
New York, New York 10016
(212) 447-1111

*For Defendants American Cyanamid Inc. and Omniglow Corp.:*

E. Gordon Haesloop, Esq.
Bartlett McDonough, Bastone & Monaghan LLP
300 Old Country Road
Mineola, New York 11501
(516) 877-2900

*For Defendant Exxon Mobil:*

John F. Tully, Esq.
Robert Owen, Esq.
Fulbright & Jaworski LLP
666 Fifth Avenue
New York, New York 10103
(212) 318-3000